UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| IN RE:<br><br>*ONE APUS* CONTAINER SHIP INCIDENT ON NOVEMBER 30, 2020<br><br>*This Document Relates to De Well Container Shipping, Inc. v. Chidori Ship Holding LLC, et al., Case No. 21-cv-9980, Southern District of New York* | X<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>X | 22-md-3028 (PAE)<br><br>**Referral of Claims to Magistrate Judge Pursuant to Settlement Agreement** |

## MOTION TO ENFORCE SETTLEMENT AGREEMENT

CHIDORI SHIP HOLDING LLC and JESSICA SHIP HOLDING S.A., making restricted appearances as Owners and bareboat charterers, respectively, of the M/V ONE APUS (collectively, "Owners") respectfully move this Court, pursuant to Section 3(A) of the Settlement Agreement entered into in this action (ECF No. 575-1) and this Court's retained jurisdiction to enforce that Agreement, for an order referring certain claims to the Magistrate Judge for a ruling.

## BACKGROUND

### A. The Settlement Agreement

On December 8, 2023, the parties to the various lawsuits subject to the above-captioned MDL Action entered into a Settlement Framework Agreement ("SFA") to resolve the claims of Cargo Interests[1] arising from the loss of and/or damage to cargo aboard the M/V ONE APUS (ECF No. 575-1; Declaration of Caroline J. Wilson ["Wilson Decl."] ¶ 3, Ex. A). Those parties

[1] "Cargo Interests" being the shippers, consignees, cargo owners, and/or their subrogated insurers seeking recovery for loss of or damage to cargo.

specifically are identified as Owners, "Settling NVOCCs," and "Settling Cargo Claimants." "Settling NVOCCs" are further identified in Schedule A to the SFA, and include Plaintiff De Well Container Shipping, Inc. ("De Well").

Pursuant to the SFA, once Owners and Cargo Interests agree on the quantum of settlement, Owners, Settling NVOCCs, Cargo Interests, and other third parties, execute a form release. (SFA, Section 4(A)). Once the release is executed Owners have thirty days to fund settlement.

Section 3 of the SFA contains a Dispute Resolution clause that provides that any claim involving a legal/factual dispute may be referred to the Magistrate Judge for determination. The SFA provides that the party requesting referral "shall file any required pleadings or other documents with the Court to request that the Magistrate issue a ruling on the disputed [c]laim." (SFA, Section 3(A)).[2]

**B. <u>De Well's Action</u>**

De Well is a non-vessel operating common carrier, or "NVOCC" who issued several bills of lading for cargo stowed on board the M/V ONE APUS during the time of the subject incident. (*see generally* Ex. B to Wilson Decl.) An NVOCC, generally, is a common carrier that "'does not operate the vessels by which the ocean transportation is provided; and . . . is a shipper in its relationship with an ocean common carrier." *In re Hapag-Lloyd Aktiengesellschaft*, 573 F.Supp. 3d 934, 948 (S.D.N.Y. 2021). "An NVOCC will issue a bill of lading to the shipper but does not undertake the actual transportation of the cargo. Instead the NVOCC delivers the shipment to an ocean carrier for transportation." *Royal & Sun Alliance Insurance, PLC v. Ocean World Lines, Inc.*, 612 F.3d 138, 140, n.2 (2d Cir. 2010).

De Well filed the instant action, in large part, to seek indemnity for amounts it paid, or may become liable to pay, to its customers in connection with the underlying cargo damage. All but one of the outstanding underlying cargo claims are subject to the SFA.[3]

---

[2] Any opposition is due fourteen days thereafter. (SFA, Section 3(A)).

[3] There are a few containers that are not part of the SFA, but Owners understand that the underlying cargo claim never came to fruition.

### C. The Disputed Claims

The disputed claims at issue here fall into three distinct categories. Each category is addressed in turn below.

i. *De Well's Purported Freight Claim ("Claims A3-A7")*

De Well's Complaint seeks recovery for damages arising from the shipment of twelve containers identified as Claims A3-A7 in the Complaint ("Claims A3-A7"). HMM, the VOCC, issued bills of lading for the twelve containers identifying De Well as the consignee. De Well, in turn, issued its own bills of lading for the same containers to its direct customer and the ultimate consignee of the goods, Ashtead Holdings Inc. ("Ashtead").

Ashtead filed suit in the District Court of the Central District of California for the loss and/or damage to the cargo identified in Claims A3-A7 in a case captioned *Ashtead Holdings Inc. v. De Well Container Shipping, Inc., et al.*, numbered 21-cv-08985 (the "Ashtead Action"). The Ashtead Action was then transferred to the District Court of the Southern District of New York and is a part of this MDL Action.

The Ashtead Action was included in Schedule C and therefore settled pursuant to the terms of the SFA. Owners, De Well, Ashtead and other third parties executed a release agreement with an effective date of September 5, 2024. (Ex. C to Wilson Decl.). The release agreement specifically identifies Claims A3-A7 by each container and corresponding bill of lading number. Collectively, these claims are referred to as the "Cargo" in the release. In Section 3(D) of the release De Well expressly "agrees to release, remise, and forever discharge [Owners] . . . from any and all claims, liens, demands, actions. . . which [De Well] had, now have, may have, or will have against [Owners] . . . arising from, related to, or in connection with the Cargo that is the subject of this Release Agreement."

Despite entering into this release, De Well maintains that it still has a claim against Owners for ocean freight Ashtead owed De Well for Claims A3-A7 in the total amount of USD 39,690.

//

ii. *Unsigned Releases*

De Well's Complaint includes a protective claim for indemnity for container no. TCLU5351876 carried under De Well bill of lading no. SBKKS0001608 ("Claim B6") and container no. TEMU6526148 carried under De Well bill of lading no. SBKKS0001553 ("Claim C1"). The underlying cargo claims associated with Claims B6 and C1 were brought by subrogated insurers, Sompo Insurance (Thailand) Public Co. Ltd and Sompo International Insurance (collectively "Sompo") in case captioned *Mitsui Sumitomo Ins. Co. of Am., et al. v M/V One Apus, et al.,* Case No. 22-cv-08233. Owners and Sompo settled the claims in principle over seven months ago, but De Well is refusing to sign the release agreement until the above referenced freight claim is resolved.

iii. *Cargo Indemnity Action*

De Well's Complaint includes a claim for indemnity for monies paid to its customer for cargo loss and/or damage that occurred during the subject incident. Specifically, the claim refers to container no. HMMU6266512 carried under De Well bill of lading no. SZSNS0002170. De Well has asked Owners to indemnify it for its loss but has not provided any underlying claim documents for Owners review.

## ARGUMENT

### A. De Well's Purported Freight Claim ("Claims A3-A7")

Despite unambiguously releasing Owners from any and all claims related to the subject cargo, De Well maintains that it is entitled to recover for freight owed to it by its customer, Ashtead. Even assuming De Well's freight claim is not encompassed by the subject release, which Owners deny, any dispute concerning freight allegedly owed to De Well by its customer is a matter between De Well and Ashtead, not Owners.

As a matter of course, Owners understand that De Well, in its capacity as an NVOCC, arranges for the transportation of its customers' goods and charges its customers for the associated ocean freight. Evidently, Ashtead did not pay De Well for the freight charges as it relates to Claims A3-A7. De Well has not articulated any legal basis for recovering said freight from the Owners.

This is nothing more than an alleged consequential loss sustained by De Well, and it has no basis in tort, *Robins Dry Dock & Repair Co. v. Flint*, 275 U.S. 303 (1927) (barring recovery of pure economic loss in tort) to recover against Owners. Moreover, De Well and Owners are not in privity with each other and there is no contractual basis to recover said losses.

**B. <u>Unsigned Releases</u>**

As a party to the SFA, De Well agreed to the settlement procedure set forth therein, including its obligation to execute a release agreement upon reaching a settlement in principle of each claim involving De Well. Claims B6 and C1 have been settled in principle. De Well has no basis to withhold its signature on the release agreement for Claims B6 and C1, much less to condition its signature on the resolution of an entirely unrelated issue.

**C. <u>Cargo Indemnity Action</u>**

Owners are interested in seeking the swift resolution of all claims subject to the MDL Action, including De Well's Complaint. That said, Owners cannot consider resolution of De Well's indemnity claim for container no. HMMU6266512 until underlying claim documents are provided for review.

## CONCLUSION

For the reasons outlined above, Owners respectfully request that the Magistrate Judge issue a ruling: (1) denying De Well's claim for freight; (2) requiring De Well to execute the applicable release agreements for the settled underlying cargo claims; and (3) requiring De Well to produce the relevant claim documents for Owners' consideration.

Dated: August 4, 2026

By: *_____/s/ Timothy Semenoro_____*

Timothy Semenoro
Robert E. O'Connor
MONTGOMERY McCRACKEN WALKER & RHOADS LLP
437 Madison Avenue
New York, New York 10022
Tel: (212) 867-9500
Email: tsemenoro@mmwr.com
rconnor@mmwr.com

and

*_____/s/ Caroline J. Wilson_____*

Alan Nakazawa
Caroline J. Wilson
COLLIER WALSH NAKAZAWA LLP
*Pro Hac Vice*
180 E. Ocean Blvd. Suite 500
Long Beach, California 90802
Tel: (562) 317-3300
Email: alan.nakazawa@cwn-law.com
caroline.wilson@cwn-law.com

GRANTED. By separate order, the Court will refer the claims in De Well's action to the Magistrate Judge for a ruling.

SO ORDERED.

PAUL A. ENGELMAYER
United States District Judge

Dated: August 5, 2026
New York, New York